UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                                        ORDER

MEHDI MOSLEM and SAAED MOSLEM,
                                                      No. 19-CR-547 (CS)

        Defendants.
-------------------------------------------------------x

Seibel, J.

      Before the Court is the motion of Defendants Mehdi Moslem and Saaed Moslem to set aside the jury verdict, for a new trial and for appointment of counsel, pursuant to Federal Rules of Criminal Procedure 33(a) and 44(a), (ECF No. 299); the Government's opposition thereto, (ECF No. 319); and Defendants' reply, (ECF No. 320). Also before the Court is Defendant Mehdi Moslem's application to supplement the motion, (ECF No. 323); the Government's opposition thereto, (ECF No. 330); and Mehdi Moslem's reply, (ECF No. 331).[1] The Court presumes familiarity with previous proceedings in the case and summarizes only those facts necessary to its decision.

      On June 3, 2021, after a three-week trial, both Defendants were found guilty of conspiracy to defraud the Internal Revenue Service, in violation of 18 U.S.C. § 371, and conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. Saeed Moslem was also convicted of making false statements to a lender, in violation of 18 U.S.C. § 1014; bank fraud, in

---

[1] Defendants have also filed a petition under 28 U.S.C. § 2255, on which the Court will rule in due course.

1

violation of 18 U.S.C. § 1344; bankruptcy fraud, in violation of 18 U.S.C. § 152; and aggravated identity theft, in violation of 18 U.S.C. § 1028A.  The evidence at trial included, but was by no means limited to, the testimony of Steven Strauhs, a certified public accountant who had prepared false tax returns for both Defendants and their businesses so that they could fraudulently underpay their taxes and who had provided false tax returns and other financial documents to assist them in making false loan applications.  Strauhs began cooperating with the Government, and recording the Defendants, in 2012.  On October 17, 2022, Mehdi Moslem was sentenced principally to 40 months' imprisonment and Saeed Moslem was sentenced principally to 96 months' imprisonment.

I.   Joint Rule 33 Motion

On March 22, 2023, the Government filed a letter pursuant to U.S.S.G. § 5K1.1 in advance of Strauhs' sentencing.  (No. 19-CR-517 ECF No. 22.)  The seventeen-page letter described criminal conduct in which Strauhs had engaged with clients, including Yehuda and Irving Rubin, Saaed and Mehdi Moslem, and Arnold and Leon Klein, as well as crimes Strauhs committed on his own behalf.  (*Id.* at 2-7.)  It also described the assistance Strauhs provided the Government, which contributed to charges against nineteen individuals, including the Moslems.  (*Id.* at 8-11.)  The letter also included a paragraph, captioned "Additional Fraudulent Conduct," that was redacted in the publicly filed version.  (*Id.* at 11-12.)  In the instant motion, Defendants contend that the information in that paragraph was not provided to them before or during trial, and that had it been provided, it would have aided their claim that Strauhs alone created the false returns and prepared the false documents without their knowledge.  (ECF No.

2

299 at 7-8.)² They argue that the Government's suppression of the *Brady* information in the redacted paragraph constitutes newly discovered evidence entitling them to a new trial, (*id.*), or at least a hearing, (ECF No. 320 at 3-4).

Judge Oetken recently summarized the legal principles governing this motion:

> Federal Rule of Criminal Procedure 33 provides: "Upon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[B]efore ordering a new trial pursuant to Rule 33, a district court must find that there is a real concern that an innocent person may have been convicted." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (internal quotation marks omitted). "The test is whether it would be a manifest injustice to let the guilty verdict stand." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (internal quotation marks omitted).
>
> Supplemental factors guide specific application of Rule 33 to disputes involving newly discovered evidence. When relying on newly discovered evidence, the defendant must prove that
>
>> (1) the evidence was newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal.
>
> *United States v. Forbes*, 790 F.3d 403, 406–07 (2d. Cir. 2015) (cleaned up).
>
> . . . . Under *Brady* and its progeny, the prosecution in a criminal case has a duty to disclose evidence that is favorable to the accused and material to guilt. That duty extends to impeachment information regarding government witnesses, *see Giglio v. United States*, 405 U.S. 150, 154 (1972), which is "evidence having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *United States v. Madori*, 419 F.3d 159, 170 (2d Cir. 2005) (internal quotation marks and citation omitted).

---

² Defendants concede that they do not know what was redacted from Strauhs' 5K letter, (ECF No. 299 at 7), yet claim to know that it was not provided to them, (*id.*; ECF No. 320 at 2-4).

3

> The government's duties under *Brady* and *Giglio* are violated if the government withholds information that, "if suppressed, would deprive the defendant of a fair trial." *United States v. Bagley*, 473 U.S. 667, 675 (1985). Such a deprivation occurs only where there is a "reasonable probability" that the suppression "affected the outcome of the case," or would have "put the whole case in such a different light as to undermine confidence in the verdict." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (citation omitted). Thus, there "is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). Moreover, evidence is not "suppressed" under Brady "if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *United States v. Paulino*, 445 F.3d 211, 225 (2d Cir. 2006); *see also United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) (explaining that materials that the defense could have obtained "are not deemed suppressed if defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation").
>
> To prove a *Brady* violation, "a defendant must show that (1) the government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *Coppa*, 267 F.3d at 140.

*United States v. Bimbow*, No. 21-CR-48, 2023 WL 3568869, at *2 (S.D.N.Y. May 18, 2023).[3]

"In deciding such a motion, courts may weigh the evidence and the credibility of witnesses but cannot 'wholly usurp' the role of the jury. Accordingly, the power to set aside a jury verdict should be used sparingly and only in the most extraordinary circumstances." *United States v. Whyte*, No. 19-CR-64, 2023 WL 2446295, at *1-2 (D. Conn. Mar. 10, 2023).

Defendants do not come close to meeting these standards. The redacted material in the Strauhs 5K letter refers to other clients for whom Strauhs" prepared false tax returns and a scheme in connection with which he prepared false Forms K-1. The Government alleges that it

---

[3] Unless otherwise noted, all case quotations omit internal citations, quotation marks, alterations, and footnotes. The Court will send Defendants copies of all unpublished decisions cited in this Order.

4

disclosed this information to Defendants' counsel in the 18 U.S.C. § 3500 material for Strauhs, and a comparison of the specific items of 3500 material it cites, (*see* ECF No. 319 at 1 (citing Government Exhibits 3540-15, 3540-16, 3540-20, 3540-53, 3540-141)), to the redacted paragraphs confirms the accuracy of the Government's representation.[4]   While Defendants claim in conclusory fashion that they "were only privy to [Strauhs'] prior criminal conduct that was expressly set forth in the Government's sentencing letter filed in connection with the witness's sentencing," (ECF No. 320 at 2),[5] they do not deny that their counsel received the specific items of 3500 material identified by the Government, which provided the same information in the redacted paragraph of the 5K letter.   Instead they argue that if the information had been turned over to them, there would have been no need for the Government to redact it from the 5K letter.   Defendants are incorrect.   The redacted information, unlike the other information in the letter, did not result in charges.   While the Government was obliged to provide it to Defendants as 3500 material, and to the Court in connection with Strauhs' sentencing, it was not obliged to reveal information about uncharged third parties in a document filed on a publicly accessible database – and was properly prudent in not doing so.[6]

---

[4] The Government incorrectly argues, however, that the motion is untimely.   (ECF No. 319 at 1.)   New-trial motions based newly discovered evidence must be made within three years of the guilty verdict.   Fed. R. Crim. P. 33(b)(1).   Although the motion is meritless, Strauhs' 5K letter was newly discovered.

[5] This claim cannot possibly be true, as the 5K letter was seventeen pages, and just the five 3500 exhibits listed by the Government – a small fraction of the total, which went into the hundreds – add up to 230 pages.

[6] Despite the Government having specified the items of 3500 material mirroring the information in the redacted paragraph, Defendants argue that a hearing is warranted because the Government has not specified the date on which it provided that 3500 material to the defense.

Accordingly, while the Strauhs 5K letter may be newly discovered, it is not newly discovered evidence of a *Brady* violation, because the information in the letter was not withheld from the defense. Moreover, even if it had been withheld, it is merely cumulative impeachment material – additional fraudulent conduct by Strauhs, whose years of dishonesty and fraudulent behavior were well known to the jury. A few more instances of misconduct would have made no difference to the jury's assessment of Strauhs' testimony. *See, e.g.*, *United States v. Viera*, No. 14-CR-83, 2021 WL 1320891, at *7 (S.D.N.Y. Apr. 8, 2021); *United States v. Rajaratnam*, No. 09-CR-1184, 2010 WL 1691745, at *2 (S.D.N.Y. Apr. 27, 2010). Moreover, Strauhs was corroborated by, among other things, recordings of both Defendants instructing him to create false tax returns – recordings which render comical the notion that Strauhs created those returns without their knowledge. Strauhs' testimony was also corroborated by the common sense notions that: a) he would have no reason to falsify Defendants' tax returns over years without their knowledge, and b) purported tax returns that showed a much stronger financial picture than those filed with the IRS could not have somehow mysteriously ended up, with no input from Defendants, with the banks from whom Defendants sought loans.

Even if the Government had withheld the information in the redacted paragraph of the Strauhs 5K letter, which it did not, it is inconceivable that it would have led to an acquittal. I

---

But the Government has represented that it provided the documents, and Defendants have provided no contrary evidence. If their counsel were to deny having received the relevant items of 3500 material, there might be a fact dispute warranting a hearing. On the current record, there is not.

have no concern whatsoever that either Defendant is innocent.   Their motion for a new trial, (ECF No. 299), is therefore denied.

II.        Mehdi Moslem's Motion to Supplement

Defendant Mehdi Moslem has requested permission to supplement the motion with additional evidence.   He alleges that Strauhs renewed his CPA registration in 2020 and 2023, after having pleaded guilty in 2019, and that on information and belief "obtained very recently," (ECF No. 323 at 2), Strauhs did not disclose to the state licensing authorities his conviction or the facts underlying it, despite the registration process requiring such information.   He alleges that Strauhs' false denial of his conviction is a criminal offense, committed during Strauhs' cooperation, that the Government failed to disclose under *Brady*; that it was "impeaching, exculpatory, and material to the jury's consideration;" and that it "would certainly have resulted in a finding of not guilty as to both Defendants, on all counts."   (*Id.* at 3.)   He argues, without citing any basis, that the Government knew of the false statement at the time of the 2020 renewal and withheld that information from the defense.   (*Id.* at 2.)   He further argues that while the jury was aware that Strauhs had not notified the licensing authorities, it was not aware that he had made a false statement in his renewal application, and that this information would have been "fatal" to his credibility.   (ECF No. 331 at 3.)

The Government does not dispute Strauhs' false statement in connection with his license renewals, but points out that that information is not newly discovered, in that Mehdi Moslem's counsel cross-examined Strauhs about the very fact that he had not notified the licensing authority about his conviction (which Strauhs attempted to excuse on the basis that his plea had

7

been sealed), despite knowing such reporting was required.[7]  (ECF No. 330 at 2-3 (citing Transcript of Proceedings dated May 25, 2021 (ECF No. 142) at 844).)   It also notes that Strauh's renewal in 2020 – the new evidence on which Mehdi Moslem relies (the 2023 renewal not having taken place until after the trial) – and the requirement that CPAs disclose convictions, were at all relevant times publicly available on the New York State Department of Education website, so the lie could easily have been discovered by the defense before trial.  (*Id.* at 3.)   It further argues that the false statement at issue is merely cumulative impeachment material of a witness whose credibility had already been challenged, and would not likely have resulted in an acquittal, given the recorded corroboration of Strauhs.  (*Id.* at 4.)

As noted, a Rule 33 motion based on newly discovered evidence "may be granted only upon a showing that the evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal."  *United States v. Owen*, 500 F.3d 83, 87 (2d Cir. 2007). "Because motions for a new trial are disfavored in this Circuit the standard for granting such a motion is strict; that is, newly discovered evidence must be of a sort that could, if believed, change the verdict."  *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995).  The defendant must also show that the evidence "could not have been discovered, exercising due diligence, before or during trial."  *United States v. Siddiqi*, 959 F.2d 1167, 1173 (2d Cir. 1992). Thus, "[p]ublicly available information that could have been discovered before or during trial

---

[7] Strauhs' plea on July 17, 2019 remained sealed until April 13, 2021.  He began testifying on May 21, 2021.

with due diligence cannot provide the basis for a Rule 33 motion for a new trial based on newly discovered evidence." *Whyte*, 2023 WL 2446295, at *3 (collecting cases).

Here defense counsel were obviously focused on Strauhs' license and questioned him about it.  It would have been a simple matter to check the public database to see when he renewed his license and determine if he had made a false statement in addition to the material omission about which he was cross-examined.  *See United States v. Teman*, 465 F. Supp. 3d 277, 343 & n.38 (S.D.N.Y. 2020) (evidence "available on a public database" cannot support new trial motion based on Government's failure to disclose under *Brady* and *Giglio* because "the evidence . . . was a matter of public record, which [Defendant] himself had the ability to, and ultimately did, locate"), *aff'd*, No. 21-1920, 2023 WL 3882974 (2d Cir. June 8, 2023).  Because the evidence on which Mehdi Moslem relies has been available all along, he has not met his burden of showing that it could not with due diligence have been discovered before or during trial.

For the same reason, there is no *Brady* or *Giglio* violation.  The Government does not violate its obligation under those cases where the defendant "knew or should have known of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982); *see United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) ("[T]he rationale underlying Brady is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government."); *see also United States v. Constantine*, No. 20-4278, 2022 WL 950954, at *2 (2d Cir. 2022) (summary order) (affirming district court's denial of Rule 33 motion based on alleged

*Brady* violation where defendant had access to facts enabling him to take advantage of exculpatory material); *Whyte*, 2023 WL 2446295, at *3 (evidence not newly discovered, and no *Brady* or *Giglio* violation, where defendant could have found public information regarding witness before trial).8

Finally, as noted, "a new trial is generally not required when the testimony of the witness is corroborated by other testimony, or when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995). Not only was Strauhs' testimony corroborated as described above, but the jury was well aware that he had made numerous false statements in numerous contexts, including on his own tax returns, and that he had not informed the licensing authorities of his conviction despite knowing he was obligated to do so. That he misled the CPA licensing authorities not just by omission but also by commission was pure impeachment (having no relation to his conduct relating to Defendants) and would have been cumulative of the ample other impeachment of which Defendants and the jury were aware.

Accordingly, the application to supplement the new trial motion is granted, and so supplemented, the motion is denied. In addition, Saaed Moslem's applications for bail pending

---

[8] Indeed, as Mehdi Moslem concedes, (ECF No. 323 at 2; ECF No. 331 at 3), the Government's *Brady/Giglio* disclosure obligation extends only to favorable evidence in the hands of the prosecution team. *See United States v. Hunter*, 32 F.4th 22, 36 (2d Cir. 2022) ("[W]hile a prosecutor has a duty under *Kyles* [*v. Whitley*, 514 U.S. 419 (1995)] to learn information when that information is possessed by others on the 'prosecution team,' undisclosed information that is not known to anyone on that team does not give rise to a *Brady* violation."). Mehdi Moslem has not suggested, let alone provided evidence, that the New York State department responsible for licensing of CPAs was part of the prosecution team here (and the Court is aware of no such evidence).

resolution of the new trial motion, (ECF Nos. 314, 327), are denied as moot, and Defendants' request for appointment of counsel in connection with the motion is also denied, *see United States v. Trudeau*, No. 10-CR-234, 2015 WL 7257825, at *4-5 (D. Conn. Nov. 17, 2015) (neither 18 U.S.C. § 3006A nor Fed. R. Crim. P. 44 entitle defendant to appointed counsel for new trial motion); *United States v. Susana*, No. 89-CR-198, 1993 WL 190339, at *2 n.2 (S.D.N.Y. June 3, 1993) (declining to appoint counsel where defendant failed to meet threshold of showing new trial motion likely to be of merit).

The Clerk of Court is respectfully directed to terminate ECF Nos. 299, 314, 327 and 328; to send a copy of this Order to Saaed Moslem, No. 87068-054, FCI Fort Dix, Federal Correctional Institution, P.O. Box 2000, Joint Base MDL, NJ 08640; and to send a copy of this Order to Mehdi Moslem, 138 Smith Clove Road, Central Valley, NY 10917.

SO ORDERED.

Dated: August 30, 2023
      White Plains, New York

*Cathy Seibel*

CATHY SEIBEL, U.S.D.J.