UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                                ORDER

MEHDI MOSLEM and SAAED MOSLEM,
                                                        No. 19-CR-547 (CS)

        Defendants.
-------------------------------------------------------x

Seibel, J.

      Before the Court is the motion of Defendant Mehdi Moslem to dismiss the indictment, disqualify me and attorney Michael Burke, and grant him a new trial, (ECF No. 397), and his largely duplicative motion to dismiss for insufficient evidence, (ECF No. 399).[1]

      I incorporate herein my previous rulings in ECF Nos. 334, 339, 369, 375, 383 and 394.

---

[1] As best as I can tell, the only issue raised in the latter motion that is not raised in the former is the absurd suggestion that because Mr. Moslem and his son met with their accountant Stephen Strauhs in their place of business behind closed doors, it somehow violated their Fourth Amendment rights for Strauhs to testify about those conversations. "[A] defendant does not have a privacy interest in matters voluntarily revealed to a government agent, including a confidential informant." *United States v. Davis*, 326 F.3d 361, 365 (2d Cir. 2003) (citing, among other cases, *United States v. Longoria,* 177 F.3d 1179, 1183 n. 2 (10th Cir.) ("If a defendant . . . knowingly exposes his conversations to accomplices, even in a room not accessible to the general public, his conversations are not subject to Fourth Amendment protection from disclosure by such accomplices.").) "[Strauhs] was in the [office] by invitation, and every conversation which he heard was either directed to him or knowingly carried on in his presence. The [defendant], in a word, was not relying on the security of the [office]; he was relying upon his misplaced confidence that [Strauhs] would not reveal his wrongdoing." *Hoffa v. United States*, 385 U.S. 293, 302 (1966). Under long settled law, Strauhs' testimony about his conversations with Mr. Moslem, like his recordings of such conversations, *see U.S. v. White,* 401 U.S. 745, 751–53 (1971) (conversations recorded on consent of one party do not violate the other party's Fourth Amendment rights), did not violate the Fourth Amendment.

1

As previously explained, the time for a motion to dismiss the indictment has long passed. *See* Fed. R. Crim. P. 12. Mr. Moslem has been convicted of the charges in the indictment and his remedy, if any, is on appeal. I do not intend to entertain any more motions to dismiss an indictment that is no longer pending in this Court. Likewise, the time to address alleged insufficiency of evidence before this Court has long passed. *See* Fed. R. Crim. P. 29, 33.

As for disqualification, the application is frivolous. There is nothing from which to disqualify Mr. Burke, as his representation of Mr. Strauhs has concluded. Moreover, that Mr. Burke had previously represented a party adverse to Mr. Moslem in civil litigation, and then represented a cooperator who testified against him in a criminal matter, did not create any conflict requiring Mr. Burke to decline his representation of Mr. Strauhs. Assuming for the sake of argument that representing a witness who testifies for the Government in a defendant's criminal case makes the lawyer adverse to that defendant, there is no conflict in a lawyer being adverse to a party in more than one matter. There might have been a conflict if Mr. Burke went from being aligned with Mr. Moslem to being adverse, but that did not happen here.

Nor need I recuse myself. Under 28 U.S.C. § 455(a), a judge must recuse herself if her impartiality might reasonably be questioned. But she must also "be alert to avoid the possibility that those who would question their impartiality are in fact seeking to avoid the consequences of the judge's expected adverse decision." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992) (cleaned up). "Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality." *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227

(2d Cir. 2009). I thus do not address, in connection with recusal, Mr. Moslem's disagreements with my rulings.

No reasonable person would question my impartiality because Mr. Strauhs' lawyer Mr. Burke was one of several local attorneys who were (seven years before Mr. Moslem's trial) drafted onto a committee to plan the joint celebration of the Southern District's 225th anniversary and the 20th anniversary of the opening of the White Plains courthouse. Lawyers, like judges, are not required to "decline invitations to numerous events of an entirely innocent nature that are of importance to the judiciary, the profession, and legal education." *In re Aguinda*, 241 F.3d 194, 203 (2d Cir. 2001). Nor does my alleged appointment of Mr. Burke to represent Mr. Strauhs without requiring a financial affidavit warrant recusal, because it did not happen. Nobody – not the Magistrate Judge who arraigned Strauhs (and it is at the first appearance that appointed counsel is usually assigned) nor I – appointed Mr. Burke under the Criminal Justice Act ("CJA"). I have checked with the Court's CJA administrator and Mr. Burke never sought and was never paid with CJA funds. The indication on the docket under his name designating him as a "CJA Appointment" appears to be a mistake by someone in the Clerk's Office who recognized Mr. Burke as a member of the CJA Panel but did not realize that he had been privately retained by Mr. Strauhs.

Finally, Mr. Moslem's suggestion that I engaged in improper *ex parte* communication because I read the parties' submissions and the *Fatico* hearing record in advance of sentencing is beyond frivolous. "An *ex parte* communication is one or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested." *Villeneuve v. Connecticut*, No. 10-CV-296, 2010 WL 4976001, at *9 (D. Conn.

3

Dec. 2, 2010) (cleaned up), *appeal dismissed*, 472 F. App'x 84 (2d Cir. 2012). Mr. Moslem has identified no such communication. Rather, his absurd objection is that I thought about the sentencing ahead of time. As I explained at the time:

> The defendants seemed to be worked up about the fact that I did my homework. Indeed, it would be judicial malpractice not to have done it. I absolutely am reading from notes, and that is because I do my job, which is to study the record and figure out what it supports and then come into this room and let the parties make arguments. And if I hear anything that changes my mind from my preliminary analysis, I adjust accordingly, and in a case of this complexity, it would, as I said, be judicial malpractice not to give considerable thought to the issues before coming in. And I give both sides an opportunity to be heard because sometimes I change my view on something based on what I've heard, but the fact that I'm prepared to do my job today should not be a surprise to anyone.

(ECF No. 318 at 59:18-60:6.). No reasonable person could find the Court's conduct to be in any way improper.

I have already addressed Mr. Moslem's repeated arguments regarding Strauhs' withdrawal from the conspiracy, the grand jury, the statute of limitations and the loss amount attributed to Mr. Moslem, and do not intend to address them again. Mr. Moslem is pursuing his appellate remedies, and it is a waste of his time and mine for him to continually file motions in this Court re-raising the same issues.

The Clerk of Court is respectfully directed to terminate ECF Nos. 397 and 399, and to send a copy of this Order to Mehdi Moslem, 138 Smith Clove Road, Central Valley, NY 10917.

SO ORDERED.

Dated: November 1, 2024
      White Plains, New York

*Cathy Seibel*

CATHY SEIBEL, U.S.D.J.